## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

          Plaintiff,

     v.                                   No. **CR 06-1833 MCA**

**WINGROVE EDWARD MICHAEL**,

          Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the following motions filed on October 29, 2007:  (1) Defendant's *Motion in Limine* [Doc. 100]; (2) the *United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b)* [Doc. 99]; (3) the *United States' Motion in Limine for Pretrial Ruling Excluding Hearsay Statements Made by the Defendant* [Doc. 97]; (4) the *United States' Motion in Limine to Voir Dire Defense Witnesses Outside the Presence of the Jury* [Doc. 96]; (5) the *United States' Motion in Limine for Pretrial Ruling Excluding Use of the Term "Bad Faith"* [Doc. 95]; (6) the *United States' Motion in Limine Regarding Self-Authenticating Records of Regularly Conducted Activity* [Doc. 94]; and (7) the *United States' Motion in Limine to Clarify Court's Order Filed August 17, 2007* [Doc. 93].   The Court heard arguments from counsel regarding these motions at the Call of the Calendar on November 8, 2007.  Having reviewed the parties' submissions, the relevant law, and being fully advised in the premises, the Court denies the

Government's motion to voir dire defense witnesses, grants in part and denies in part the Government's motion in limine regarding hearsay statements attributed to Defendant, denies the Government's motion in limine regarding Defendant's tax records, grants the Government's motion in limine regarding Rule 404(b) evidence, grants in part and denies in part the Government's motion to clarify the Court's prior ruling, grants the Government's motion in limine regarding the term "bad faith," and  denies Defendant's motion in limine subject to the conditions set forth below.

### A.    The Marijuana Evidence and Destruction Thereof

I first address Defendant's motion in limine to prohibit the Government from offering evidence as to the total amount or weight of the marijuana beyond the eleven small samples that were actually preserved.  [Doc. 100.]  The Court previously ruled on Defendant's due-process challenge to the Government's destruction of the bulk marijuana in the *Memorandum Opinion and Order* [Doc. 79] filed on August 17, 2007.  Specifically, the Court declined to dismiss the *Indictment* or suppress the marijuana evidence in its entirety, but instead fashioned more limited relief directed at precluding the Government's witnesses from testifying about the *odor* of the marijuana during the period before they opened the crates in which it was packaged.

In this prior ruling, the Court noted that the bulk marijuana is not central to the Government's case-in-chief at trial because the law does not require the Government to introduce the entire load of marijuana into evidence in order to prove the essential elements of the charged offense, including the total weight of the marijuana that was seized.  Rather, the jury is entitled to use "'logical and probabilistic reasoning'" in order to infer the identity

2

and quantity of the controlled substance as a whole from other evidence (such as representative samples, laboratory analysis, photographs, videotape, and eyewitness testimony). United States v. Atencio, 435 F.3d 1222, 1232 (10th Cir. 2006) (quoting United States v. Arras, 373 F.3d 1071, 1074-75 (10th Cir. 2004)). By the same token, defense counsel is entitled to cross-examine the Government's witnesses, or call other witnesses, in order to point out contrary inferences which might be drawn if there was a failure to verify the contents of each bundle or package found inside the crates before destroying them.

Further, Defendant's counsel had the opportunity to view the bulk marijuana and request that it be re-weighed before the Government destroyed it. Neither during his viewing of the bulk marijuana nor in his motion papers or correspondence with the Government regarding preservation of the evidence did Defendant's counsel specifically request that the evidence be re-weighed or that it be preserved for purposes of challenging the Government's calculation of its weight. Defendant never provided the Government with timely and specific notice of any reason to suspect that there was an error in weighing the bulk marijuana prior to its destruction. For these reasons, the factors relevant to Defendant's due-process challenge do not provide legally sufficient grounds for precluding testimony about the total weight or amount of the seized bundles or their contents. Rephrasing Defendant's due-process claim as a motion in limine not change that result.

Nevertheless, the parties are entitled to clarification of how the marijuana evidence and the facts concerning the Government's destruction thereof will be handled at trial. The Government seeks such clarification by moving to prohibit Defendant from using the term "bad faith" to characterize the Government's destruction of the marijuana or handling of the

evidence in this case. [Doc. 95.] In addition, the Government moves for an order clarifying whether its witnesses may refer to the fact that Officer Lucero's canine alerted to the trailer, and whether its witnesses may testify as to the odor of marijuana emanating from the seized bundles during the time they were being unloaded from the trailer, collected, and weighed. [Doc. 93.]

The probative value of the canine alert is relatively limited at this point, because the jury is not called upon to determine whether the officers had probable cause to search the trailer or its contents, and other witnesses will be available to testify about what was found in the trailer after the search. For this reason, I will permit brief testimony regarding the canine alert only to the extent that it provides background information to explain the sequence of events during the officer's inspection. The overall sequence of events during this inspection is relevant not only to show how the officers came to discover the marijuana, but also to show Defendant's demeanor and reactions as they may bear on the likelihood that he knew of the trailer's contents. Accordingly, the Government's motion is granted in part as to such limited testimony about the canine alert.

The Government is correct that the Court's prior ruling on the due-process issue was not directed at any testimony about the canine alert. The reliability of the canine alert was instead addressed in the *Memorandum Opinion and Order* [Doc. 72] denying Defendant's second motion to suppress and related motions [Doc. 33, 34, 36, 37]. As noted in that ruling, the canine's ability to detect trained odors is much greater than that of a human being, so the canine alert implies nothing about a human being's ability to detect such trained odors or which specific trained odor (*e.g.*, marijuana) caused the alert. Defense counsel is free to

4

emphasize these points by eliciting such testimony from the canine's handler on cross examination.

The Government also is correct that the Court's prior ruling did not explicitly prohibit the Government's witnesses from testifying about the odor of marijuana *after* the crates were opened and the bundles were in the process of being unloaded, collected, or weighed. Nevertheless, I now recognize there is a danger that such testimony might be used to draw inferences about whether it was possible to smell the marijuana *before* the crates were opened. While this danger might be averted by means of a stipulation informing the jury that the odor of marijuana was not subject to human detection before the crates were opened, Defendant elected not to enter into such a stipulation when the issue was presented at the Call of the Calendar. The Court cannot force Defendant to enter into such a stipulation and thereby risk forfeiting the objections raised in his motion to dismiss and motion in limine.

Accordingly, I conclude that the probative value of testimony or other evidence concerning the odor emanating from the bundles, crates, or marijuana *after* the crates were opened is substantially outweighed the danger of unfair prejudice. In particular, Defendant would be unfairly prejudiced by evidence on this subject because it would become a likely source of inferences about the odor of the marijuana *before* the crates were opened, and such inferences would circumvent the Court's prior ruling on Defendant's due-process challenge. For these reasons, the Court will not allow any testimony from the Government's witnesses concerning the odor of the marijuana during any phase of the search or seizure or the subsequent weighing, testing, storage, transportation, or destruction of the crates, bundles, and marijuana. The Government's motion is denied in part as to this issue.

5

As for the use of the word "bad faith" or other legal terminology from the Court's prior ruling on Defendant's due-process challenge, Defendant's counsel stated at the Call of the Calendar that he has no intention of eliciting testimony from the Government's witnesses on these topics, and for good reason.  The jury's role at trial is to decide the facts relevant to the charged offense, not to draw inferences from the Court's pretrial rulings on legal issues pertaining to the admissibility of evidence or the Defendant's invocation of his constitutional rights.  Even if premised on a finding of "bad faith," revealing to the jury that Defendant invoked his constitutional right to due process and thereby obtained the suppression of certain evidence could be the subject of improper inferences at trial, just as in a case where a witness or prosecutor comments on a defendant's invocation of his right to remain silent.  For these reasons, I will not permit counsel to comment or elicit testimony in front of the jury about the Court's pretrial rulings on Defendant's due-process challenge, including any findings as to the Government's "bad faith" or state of mind at the time of the marijuana's destruction.  The Government's motion to exclude such testimony is granted.

It does not necessarily follow, however, that the parties or their witnesses are precluded from mentioning the bare fact that the Government destroyed the marijuana, or the date it was destroyed.  Certainly the Government's witnesses may be asked to explain to the jury what happened to the portion of the seized load that was not introduced into evidence, and what steps they took (or failed to take) with regard to determining the contents and weight of the seized bundles depicted in the Government's exhibits before they were destroyed.

**B.**     **The Logbook Entries**

I next turn to the Government's motion in limine concerning the admissibility of one of four log books seized from Defendant's trailer.  [Doc. 99.]   The logbook in question has entries purportedly dating from January 1, 2006, to June 12, 2006.  The search and seizure at the Gallup Port of Entry which provides the basis for the *Indictment* in this case did not occur until August 9, 2006, and consequently Officer Lucero was looking at a different logbook  during his inspection on the latter date.  Thus, the days of off-duty status reported in the earlier logbook entries may be viewed as "prior acts" subject to Fed. R. Evid. 404(b), rather than *res gestae* evidence that is inextricably intertwined with the search and seizure of the illegal cargo that gave rise to the *Indictment* in this case.

Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."   Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident.  See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  This test requires that:

> (1) the evidence must be offered for a proper purpose;  (2) the evidence must be relevant;  (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice;  and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be

considered only for the proper purpose for which it was admitted.

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).

In this case, the Government asserts that the entries in Defendant's logbook for the first half of 2006 (as well as the remaining period leading up to the date of the seizure) are relevant and admissible under Fed. R. Evid. 404(b) because Defendant's reporting his off-duty status during these periods, combined with other anomalies in his logbook entries, provide circumstantial evidence to rebut the notion that he was then operating a legitimate and ongoing commercial-trucking business.   Rebutting this notion is relevant to the Government's case for at least three reasons:   (1) the lack of legitimate and ongoing commercial-trucking business may provide a financial motive for Defendant to turn to the business of marijuana trafficking, (2) if Defendant was not engaged in an ongoing, commercial-trucking business in 2006, then it is less likely that he became an unknowing carrier of a load of crates filled with marijuana through some mistake or accident, and (3) anomalies in the logbook entries make it more likely that the logbooks formed part of a plan to conceal or dissimulate his status as a marijuana trafficker, *e.g.*, by  listing an "off duty" status in Las Vegas, Nevada around the time that Defendant may have been picking up a load of contraband in another location such as Phoenix, Arizona.

The Court agrees that these are proper purposes for admitting evidence under Fed. R. Evid. 404(b), and that such evidence is relevant and probative with respect to the crime charged in this case.   There is nothing wrong or criminal *per se* about recording one's "off duty" status in a logbook that would unduly raise the danger of unfair prejudice from this

type of evidence.  Accordingly, the probative value of these logbook entries is not substantially outweighed by the danger of unfair prejudice or other considerations under Fed. R. Evid. 403.  In this regard, the Court also notes that the testimony of the Government's expert witnesses will be limited by the Court's <u>Daubert</u> rulings as to the types of inferences they may draw from Defendant's logbook entries.  Those <u>Daubert</u> rulings are articulated in a separate written ruling.

In addition, the Court will offer a limiting instruction adapted from Tenth Circuit Criminal Pattern Jury Instruction No. 1.30 (Feb. 2006), to advise the jury of the limited purposes for which evidence of the logbook entries for the first half of 2006 are being offered and to mitigate the potential for unfair prejudice or juror confusion occasioned by the admission of such evidence.  Defendant may, of course, offer admissible evidence to provide an innocent explanation for the logbook entries in question, or to call into question their accuracy or authenticity.

The Court's ruling also is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.  Therefore, counsel must advise both the Court and opposing counsel if and when he is ready to introduce this topic to the jury so that Defendant has the opportunity to renew his objection and the Court has the opportunity to provide a timely limiting instruction.  With these conditions imposed, the Government's motion in limine regarding the 2006 logbook entries is granted.

**C.    <u>The IRS Records</u>**

In addition to the logbook entries, the Government seeks to introduce certain tax documents bearing on the reported income of Defendant and his trucking business, "WEM

Transportation LLC." [Doc. 94.] By means of a motion in limine [Doc. 94], the Government seeks a pretrial ruling that the tax documents in question (Government Exhibits 46, 47, and 48) are self-authenticating pursuant to Fed. R. Evid. 902(11) and admissible under the hearsay exception for "records of regularly conducted activity." Fed. R. Evid. 803(6). A written certification that complies with Fed. R. Evid. 902(11) may provide the necessary foundation for the admission of records under Fed. R. Evid. 803(6) and thereby obviate the need for live testimony on this subject.

These rules traditionally have provided the basis for admitting IRS records concerning tax filings. See, e.g., United States v. Hayes, 861 F.2d 1225, 1230 (10th Cir. 1988); United States v. Marrinson, No. 85 CR 225, 1986 WL 2123, at *4 (N.D. Ill. Feb. 3, 1986). In addition, I find no specific factual basis on which to question the reliability or trustworthiness of the tax records at issue here, and other courts have consistently held that the type of records admitted under Fed. R. Evid. 803(6) and 902(11) are not considered "testimonial" under Crawford v. Washington, 541 U.S. 36 (2004), and Davis v. Washington, 126 S. Ct. 2266 (2006). See United States v. Feliz, 467 F.3d 227, 233-34 (2d Cir. 2006); United States v. Ellis, 460 F.3d 920, 926-27 (7th Cir. 2006); United States v. Baker, 458 F.3d 513, 519 (6th Cir. 2006). In particular, "the CNR of an IRS custodian, although created for litigation, is analogous to a nontestimonial business record. Its preparation involves the objective, factual exercise of verifying the existence or nonexistence of nontestimonial matter." United States v. Bryant, No. 3:04-CR-00047-01, 2006 WL 1700107, at *3 (W.D. Va. June 15, 2006).

Defendant's objections to the admission of the tax records is based on relevance and Fed. R. Evid. 403 rather than the technical requirements of Fed. R. Evid. 803(6) and 902(11).

In response to these objections, the Government states that the purpose of offering the CNR for 2006 is to explain why the Government is instead relying on the 2005 tax records, and the purpose of offering the 2005 records is to show that Defendant's main source of income was his trucking business and that his trucking business was losing money, such that he would have a financial motive to turn to marijuana trafficking.

I agree that such a financial motive would be relevant here, but I do not agree that the tax records alone provide a basis from which to draw reasonable inferences about Defendant's financial condition or motive.  Absent the testimony of a tax expert who is qualified to explain the content of Defendant's tax records, their introduction into evidence presents a great danger of unfair prejudice or confusion of the issues.  Explaining how income and deductions are calculated on the tax return of a partnership or sole proprietorship, and what those calculations imply with respect to the partnership's financial viability as an ongoing business, calls for specialized knowledge beyond that of an average juror.  As stated in the Court's ruling on Defendant's motion to exclude the proposed expert testimony of Officer Smid, he is not qualified to offer expert opinions on tax matters or legal interpretations of complex tax return information, nor is the Government's case agent. Absent a qualified tax expert with a reliable basis on which to make the connection between the information in Defendant's tax records and the ongoing financial viability of his trucking business, I conclude that the probative value of the tax records is substantially outweighed by the danger of unfair prejudice or confusion of the issues.

Accordingly, the tax records are not admissible under Fed. R. Evid. 403, and the Government's motion in limine on this issue is denied.  As with all rulings on motions in

limine, however, the Court's ruling is subject to reconsideration if unforeseen circumstances or a change in context should arise during the trial.

### D.    Defendant's Statements

The Government next moves for a pretrial ruling to prohibit defense counsel from eliciting testimony at trial concerning certain out-of-court statements attributed to Defendant by the DEA case agent the day *after* Defendant was arrested and first advised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).  [Doc. 97.]  At the Call of the Calendar, the Government clarified that its motion in limine on this topic is not directed at Defendant's out-of-court statements to the state officers *before* he was arrested and given Miranda warnings.  The Government intends to elicit testimony about such pre-arrest statements during its case-in-chief.

Under the rule of completeness, Defendant is entitled to cross-examine the Government's witnesses about admissions they attributed to Defendant on direct examination in order to show the context in which those admissions were made and thereby prevent unfair distortion or the exclusion of substantially exculpatory information.  See Fox v. Ward, 200 F.3d 1286, 1293 (10th Cir. 2000) (collecting cases).  Context matters here because it serves to "make the interrogation and presentation effective for the ascertainment of the truth."  Fed. R. Evid. 611(a); see United States v. Mussaleen, 35 F.3d 692, 696 (2d Cir. 1994).  While the rule of completeness does not necessarily require the admission of every statement Defendant made to the officers before his arrest, Defendant may elicit "those portions which are 'relevant to an issue in the case' and necessary 'to clarify or explain the portion already received'" on direct examination of the Government's witnesses.  United States v. Zamudio,

141 F.3d 1186, 1998 WL 166600, at *6 (10th Cir. 1998) (unpublished disposition quoting United States v. Haddad, 10 F.3d 1252, 1259 (7th Cir. 1993)).

The post-arrest statements that Defendant wishes to elicit from the DEA case agent present a closer question because the Government does not intend to elicit testimony about statements Defendant made to the DEA case agent during that time frame, which is separate from the time frame of the port-of-entry inspection when Defendant made his pre-arrest statements to the state officers. Insofar as the post-arrest statements were made to a different person in a different time frame (the following day), Defendant cannot rely on the rule of completeness as a basis for eliciting such post-arrest statements through the DEA case agent.

While Fed. R. Evid. 801(d)(2) generally allows the Government to elicit testimony about out-of-court statements attributed to Defendant because they are admissions by a party opponent, this rule does not apply to a party's attempt to elicit *his own* out-of-court statements through another witness, at least when the statements are offered for the truth of the matter asserted. See Fed. R. Evid. 801(c). Additional complications may arise in the context of statements made during custodial interrogation because of the rule barring prosecutors from commenting or eliciting testimony about a defendant's invocation of his constitutional right to remain silent or obtain the advice of counsel. See generally United States v. Nelson, 450 F.3d 1201, 1212 (10th Cir. 2006).

It is the Defendant's prerogative, however, to elicit testimony that he waived his rights and elected to speak with, or provide statements to, an agent after his arrest. The mere verbal act of making a statement, apart from its content, does not implicate the hearsay rule because the act itself is not being offered for the truth of the matter asserted. See generally Echo

13

<u>Acceptance Corp. v. Household Retail Servs., Inc.</u>, 267 F.3d 1068, 1087 (10th Cir. 2001). Further, the verbal act of making a statement may be relevant to a defense insofar as bears on the level of cooperation or candor the Defendant displayed to the agent, which may in turn serve as circumstantial evidence from which inferences may be drawn as to the state of his knowledge of the trailer's cargo.

But in this case, Defendant's counsel stated that he is *not* offering Defendant's post-arrest statements for such a limited, non-hearsay purpose. Rather, his goal is to elicit testimony regarding his post-arrest statements from the DEA case agent in order to show the truth of the matter asserted. To reach this goal, Defendant claims that his post-arrest statements are "statements against interest" under Fed. R. Evid. 804(3).

It is true that some of Defendant's post-arrest statements have the potential to incriminate him and may give rise to a colorable claim that they are "statements against interest" under this hearsay exception, (*e.g.*, his admissions that he owned the tractor-trailer rig and picked up the load of crates in which the marijuana was found). But other portions of his post-arrest conversation with the DEA agent are being offered for their exculpatory value, *e.g.*, to show that he picked up the load in question from an "Ed Richardson" and had no reason to suspect criminal activity because he had picked up other loads from this individual in the past. The Rules of Evidence do not permit Defendant to introduce the *inculpatory* portions of his post-arrest statements solely in order to "bootstrap" the admission of the *exculpatory* portions of those statements under the rule of completeness.

In the absence of some direct examination on this topic from the Goverment during its case-in-chief, I am not persuaded at this juncture that the Rules of Evidence permit

14

Defendant to elicit any of his post-arrest statements from the DEA case agent if they are offered for the truth of the matter asserted.  Depending on the context in which the issue arises during trial, however, I will defer ruling on whether Defendant can show another hearsay exception, or a non-hearsay purpose, under which testimony about such post-arrest statements to the case agent could be admitted.  With these caveats and conditions, the Government's motion in limine regarding Defendant's out-of-court statements is granted in part and denied in part.

### E.   Disclosure of Defense Witnesses

The Government next moves for permission to voir dire each of the defense witnesses (other than Defendant) outside the jury's presence before they are allowed to testify at trial. [Doc. 96.]  Fed. R. Evid. 104(c) allows for such a procedure "when the interests of justice require."   In this instance, the Government argues that the interests of justice so require because of the need to make preliminary rulings on the admissibility of the defense witness' testimony, or to provide the Government with a fair opportunity to seek such preliminary rulings.

I agree with the general proposition that both the Government and the Court are entitled to such advance notice of the anticipated content and purpose of the defense witness' trial testimony as is required for the Court to make timely and informed rulings on the preliminary questions of admissibility mentioned in Fed. R. Evid. 104.  At this preliminary juncture, however, I am not persuaded that allowing the Government to voir dire defense witnesses is the appropriate mechanism for meeting this requirement.

Requesting a proffer from Defendant's counsel provides a better avenue for

addressing the Government's concern, because it entails less risk of compelling a testimonial disclosure from the Defendant.  See generally 4 Wayne R. LaFave *et al.*, Criminal Procedure § 20.4(b), at 890-98 (2d ed. 1999).  Accordingly, I queried Defendant's counsel at the Call of the Calendar as to whether he intended to call any defense witnesses at trial whose testimony would raise preliminary questions of admissibility under Fed. R. Evid. 104 (*e.g.*, the qualification of a person to be a witness or the existence of a privilege, including the witness' privilege against self-incrimination).  Defense counsel stated that the defense witnesses did not raise such questions, and I am satisfied with his proffer at this point.

Therefore, the Government's motion to voir dire defense witnesses is denied.  As with all pretrial rulings on motions in limine, this ruling is subject to reconsideration in the event that unforeseen circumstances or a change in context were to arise during the trial.

## III.   CONCLUSION

For the foregoing reasons, the Court determines that:  (1) the Government's destruction of the bulk marijuana precludes all testimony or other evidence concerning the *odor* of the marijuana; (2) Government's destruction of the bulk marijuana does not preclude testimony or other evidence concerning the *total weight or amount* of the seized marijuana (including that which was destroyed); (3) the Government's destruction of the marijuana does not preclude testimony concerning the canine alert, but such testimony will be admitted only for the limited purpose of providing background information about the sequence of events during the inspection at the port of entry; (4) counsel are precluded from eliciting testimony or commenting to the jury about legal terminology, such as the term "bad faith," used in the Court's pretrial rulings on legal issues, but counsel are not precluded from

16

eliciting testimony or presenting argument on the facts concerning the chain of custody and eventual destruction of the bulk marijuana; (5) the logbook entries evincing Defendant's "off duty" status during the first half of 2006 are admissible for limited purposes under Fed. R. Evid. 404(b) provided that their admission is accompanied by an appropriate limiting instruction; (6) the tax records identified as Government's Exhibits 46, 47, and 48 meet the requirements for admissibility stated in Fed. R. Evid. 803(6) and 902(11), but are not admissible under Fed. R. Evid. 403 in the absence of a qualified tax expert to explain their content to the jury; (7) the rule of completeness allows Defendant's counsel to elicit some testimony about his *pre-arrest* statements in order clarify the testimony of other witnesses concerning those *pre-arrest* statements; however, Defendant has not shown legally sufficient grounds for eliciting testimony about his *post-arrest* statements if offered for the truth of the matter asserted; and (8) at this preliminary juncture, the Government has not shown why it is necessary for it to voir dire defense witnesses.  All of the Court's pretrial rulings on the admissibility of evidence remain subject to reconsideration in the event that unforeseen circumstances or a change in context arises at trial.

**IT IS THEREFORE ORDERED** that:

1.      Defendant's *Motion in Limine* [Doc. 100] is **DENIED**;

2.      the *United States' Motion in Limine to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b)* [Doc. 99] is **GRANTED**;

3.      the *United States' Motion in Limine for Pretrial Ruling Excluding Hearsay Statements Made by the Defendant* [Doc. 97] is **GRANTED IN PART** and **DENIED IN PART**;

4.      the *United States' Motion in Limine to Voir Dire Defense Witnesses Outside the*

*Presence of the Jury* [Doc. 96] is **DENIED**;

5        the *United States' Motion in Limine for Pretrial Ruling Excluding Use of the Term*

*"Bad Faith"* [Doc. 95] is **GRANTED**.

6.        the *United States' Motion in Limine Regarding Self-Authenticating Records of*

*Regularly Conducted Activity* [Doc. 94] is **DENIED**; and

7.        the *United States' Motion in Limine to Clarify Court's Order Filed August 17, 2007*

[Doc. 93] is **GRANTED IN PART** and **DENIED IN PART** under the conditions specified

above.

      **SO ORDERED** this 15th day of November, 2007, in Albuquerque, New Mexico.

 

**M. CHRISTINA ARMIJO**
UNITED STATES DISTRICT JUDGE