# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

v.                                               No. CIV 12-464 MCA/LFG
                                              No. CR 06-1833 MCA

WINGROVE E. MICHAEL

        Defendant/Movant.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On May 1, 2012, Movant Wingrove E. Michael ("Michael") filed a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255, and a separate supporting memorandum. [Docs. 1, 2.] On July 26, 2012, after requesting and receiving extensions, the United States filed a response [Doc. 9]. There was no reply. This matter is fully briefed and ready for resolution. Michael currently is incarcerated at the Federal Prison Camp in Edgefield, South Carolina. [Doc. 2, at 18.]

---

[1] Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed. *See, e.g.*, Wirsching v. Colorado, 360 F.3d 1191, 1197 (10th Cir. 2004) ("firm waiver" rule followed in Tenth Circuit holds that a party who fails to object to magistrate judge's findings and recommendations in timely manner waives appellate review of both factual and legal questions).

2. In making its findings and recommendation on this matter, the Court examined all of the pleadings and attachments in this civil proceeding and the related criminal case [No. CR 06-1833 MCA],[2] and reviewed transcripts of the pertinent criminal proceedings and hearings before the District Court Judge. In addition, the Court liberally construed Michael's *pro se* § 2255 filings. *See* Ledbetter v. City of Topeka, Kan., 318 F.3d 1183, 1187 (10th Cir. 2003). After carefully considering the pleadings, attachments, argument by parties and the pertinent law, the Court recommends that Michael's § 2255 motion be denied and dismissed, with prejudice. Because it is possible to resolve the issues on the pleadings, and the record establishes conclusively that Michael is not entitled to relief, the Court concludes that no evidentiary hearing is necessary. *See* 28 U.S.C. § 2255; United States v. Kennedy, 225 F.3d 1187, 1193 (10th Cir. 2000), *cert. denied*, 532 U.S. 943 (2001).

**Background**

3. On August 11, 2006, a Criminal Complaint was filed against Michael, charging him with a single count of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). [CR Doc. 1; United States v. Michael, 411 F.App'x 167 (10th Cir. Feb. 4, 2011) (unpublished).]

4. In affirming Michael's conviction, the Tenth Circuit set forth the following pertinent background facts:

> As found by the district court, Michael, driving a refrigerated tractor-trailer truck, passed through a checkpoint in New Mexico where his truck was subjected to a routine safety inspection. During the initial inspection, a New Mexico Department of Public Safety officer noticed the truck did not display a current Commercial

---

[2]The Court refers to pleadings in the criminal case, No. CR 06-1833, as CR Doc. __. Pleadings in this civil habeas proceeding are referred to as Doc. ___.

> Vehicle Safety Alliance inspection sticker and Michael's logbook reported unusual travel activity. Based on these observations, the officer referred Michael to a second-level safety inspection. During that inspection, Michael identified himself as the owner of the truck, including the trailer. He also produced a bill of lading that was unusual in several ways, including that it identified three boxes of tools as the only cargo. This cargo would leave most of the truck empty and would not require refrigerated transportation.
>
> While conducting an examination of the truck itself, the officer observed the trailer was empty except for three wooden crates toward the front. He also observed several features that seemed to indicate a false wall at the front of the trailer concealing a hidden compartment. Most notably, he observed a three-foot difference in length between the interior and the exterior of the trailer compartment. During the inspection, the initial investigating officer could not detect an odor of marijuana, but acknowledged in his report that another officer stated he could smell marijuana. At the conclusion of the inspection, the officer detained Michael, performing a pat-down search and conducting a canine inspection of the exterior of the truck. The dog alerted at the front of the trailer.
>
> Michael was arrested and a search warrant for the truck was obtained. The officers then opened the three wooden crates. The crates measured approximately four to five feet on each side and were fastened with wood screws, insulated on the interior with Styrofoam, and sealed with silicone along the joints. Bundles inside the crates, wrapped in contact paper, contained marijuana. The crates and their contents were seized. Drug Enforcement Administration ("DEA") agents found no fingerprints on the seized evidence. The marijuana was photographed and weighed, samples were taken for testing, and it was transferred to the DEA drug evidence vault in Albuquerque.

Michael, 411 F.App'x at 169-170.

5.      After filing charges against Michael, the DEA informed the United States Attorney that the "bulk marijuana, but not the samples" would be destroyed after sixty days unless a written request for an exception to the DEA's drug destruction policy was timely received. Due to misunderstandings or mis-communications between counsel for the parties, the bulk marijuana was destroyed. Michael then filed a motion to dismiss the charge and/or suppress "the alleged marijuana

evidence seized from the tractor/trailer," arguing the government's destruction of the marijuana violated his due process rights. Id. at 170.

6. On February 17, 2007, the District Court held an evidentiary hearing on a number of motions filed by Michael, including a motion to dismiss, or, in the alternative, motion to suppress, motion for discovery, and second motion to suppress. United States v. Michael, 2007 WL 2712964, at *1 (D.N.M. June 22, 2007) (unpublished). The Court made extensive factual findings as recited by the government in its response. [Doc. 9.] One of the issues in dispute was whether one of the officers who inspected the trailer could smell the odor of marijuana. Michael offered a potential expert witness who opined how the marijuana, if not destroyed, might have been tested to determine whether a human could have detected any odor.

> The District Court acknowledged the dispute whether the odor was detectable and credited some evidence the government acted in bad faith when it destroyed the marijuana, thereby raising due process concerns. [The Court] concluded, however, that the proper remedy was to suppress any evidence the officers or any other human could smell the marijuana. At trial, Michael testified in his own defense, stating he did not know the crates contained marijuana. He was convicted by a jury.

Michael, 411 F. App'x at 170. Thus, no evidence was admitted at trial as to whether one of the officers who inspected the trailer could detect the smell of marijuana in it. The Tenth Circuit affirmed the district court's decision, noting that the trial court cured "any possible prejudice to Michael by suppressing all evidence the government could otherwise introduce concerning human ability to detect the marijuana's odor." Id. at 172.

7. Michael's jury trial began on November 26, 2007, and concluded on November 30, 2007, when a jury found Michael guilty of the charge. [CR Doc. 133, 137.] On August 11, 2009, Michael was sentenced to a period of incarceration of 78 months. [CR Doc. 181, 186.]

4

8. Throughout these proceedings, Michael was represented by attorney Billy Blackburn. Attorney Blackburn filed numerous motions and pleadings on behalf of Michael, including the motions noted above, a motion to preserve evidence, motion for <u>Franks</u> hearing, motions in limine, motion to quash subpoena, motion to exclude expert testimony, objections, sentencing memorandum and objections to the PSR, and motion for downward departure. Attorney Blackburn succeeded, at least in part, on some of the motions.

9. On August 26, 2009, Michael filed a notice of appeal. [CR Doc. 182.] On December 15, 2009, the Court of Appeals granted Mr. Blackburn's motion to withdraw as counsel and appointed appellate counsel. [CR Doc. 190.] On appeal, Michael argued that the district court erred in denying his motion to dismiss the charge on the grounds that the government destroyed potentially exculpatory evidence in bad faith. In addition, Michael asserted that the district court erred in refusing to grant a downward adjustment to his sentence for his minor role and also erred for enhancing his sentence based on a finding of obstruction of justice. <u>Michael</u>, 411 F.App'x at 169. On February 4, 2011, the Court of Appeals affirmed Michael's conviction. The mandate was issued on February 28, 2011. Michael did not file a petition for writ of certiorari.

10. On May 1, 2012, Michael filed this § 2255 motion. He claims that Attorney Blackburn provided ineffective assistance of counsel by (1) not objecting to the prosecution's use of a "suppressed" statement that was allowed to be used as a basis for probable cause for the subsequent search and seizure; (2) not objecting that Michael's Fourth Amendment rights were violated when New Mexico police officers illegally searched Michael's cargo "when such searches are not authorized under New Mexico law;" (3) lying to Michael when counsel misrepresented that he filed a subpoena for audio recordings when in fact no such subpoena existed; and (4) failing to

5

subpoena audio belt tape recordings, which Michael alleged would have provided material impeachment evidence. [Doc. 2, at 1-2.]

## Analysis

I. **ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL**

   *A.  Legal Standard:*

11.  In United States v. Livingston, 2012 WL 3055847, at * 2 (10th Cir. July 27, 2012) (unpublished), the Tenth Circuit Court of Appeals recently described the pertinent legal standard as follows:

> To prove ineffective assistance of counsel, the defendant must show, first, that counsel's performance was in fact deficient—that is, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland [v. Washington], 466 U.S. [668] at 687 [1984]. Second, "the defendant must show that the deficient performance prejudiced the defense." Id. "We may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." Fields v. Gibson, 277 F.3d 1203, 1216 (10th Cir. 2002).

12.  In Strickland, the United States Supreme Court emphasized that judicial scrutiny of counsel's performance must be highly deferential. An adverse result is not evidence of ineffective assistance, and a court should not second-guess counsel's representation after an adverse verdict or sentence. An attorney's performance should be evaluated from counsel's perspective at the pertinent time, giving due regard to counsel's trial tactics and strategy, and thereby eliminating any distorting effects of 20/20 hindsight. A court must indulge a strong presumption that counsel's conduct was reasonable and could have been considered sound trial strategy. Strickland, 466 U.S. at 689. Stated differently, for an attorney's performance to be deficient, "it must be[ ] completely unreasonable, not merely wrong." Hooks v. Workman, 606 F.3d 715, 723 (10th Cir. 2010) (citation omitted). The

6

defendant has the burden of proof to overcome the presumption that counsel's performance was reasonable. United States v. Cronic, 466 U.S. 648, 658 (1984).

13. The Supreme Court also instructed that "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland 466 U.S. at 691. Deficiencies in counsel's performance "must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Id. at 692. As stated above, ineffective assistance claims are subject to a general requirement that the defendant affirmatively prove prejudice. Id. at 693 (internal citation omitted). Thus, it is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding; instead, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

14. Moreover, in order to demonstrate prejudice under Strickland, "[w]here defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence . . . ." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). In Lockhart v. Fretwell, 506 U.S. 364, 374 (1993) (concurring), Justice O'Connor wrote:

> Since Strickland, we have recognized that neither the likely effect of perjured testimony nor the impact of a meritless Fourth Amendment objection is an appropriate consideration in the prejudice inquiry. Nix v. Whiteside, 475 U.S. 157 [] (1986) (failure to put on perjured testimony); Kimmelman v. Morrison, 477 U.S. 365, 382 [] (1986) (where the defendant claims that the deficient performance was failure to make a suppression motion, "a meritorious Fourth

7

>Amendment issue is necessary to the success of a Sixth Amendment claim" (emphasis added)).

See also Sanchez v. Ulibarri, 308 F. App'x 280, 284 (10th Cir. Jan. 22, 2009) (unpublished) (because he asserted a Fourth Amendment-based ineffective assistance of counsel claim, the petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.") (citation omitted).

>**B.** *Allegations of Ineffective Assistance of Counsel*
>
>>**1) Failure to object to statement used as basis for probable cause for search and seizure**

15. Michael alleges that his attorney was ineffective for his "failure to recognize that the Court's [later] suppression of a human odor detection of marijuana rendered the use of such suppressed [sic] as probable cause in the search warrant affidavit as also being suppressed." [Doc. 1, at 7.] Stated differently, Michael contends that because the "human odor of marijuana" evidence was later excluded from trial, it should not have been allowed to comprise any part of the probable cause determination for the search warrant. Thus, his attorney's failure to raise an objection as to the evidence allowed to support the search warrant was allegedly deficient.

16. Michael's position is unpersuasive. There were a number of factors that supported a probable cause finding to inspect and search the trailer. Indeed, after the evidentiary hearing, the District Court made thorough findings as to whether officers had probable cause to inspect the trailer's interior. The Court summarizes some of those findings as follows. Officer Lucero, at the credential booth at the Gallup, New Mexico port of entry, on the date in question, observed that Michael's tractor-trailer rig was not displaying a current "CV SA" inspection decal, signifying that the vehicle recently passed a safety inspection in accordance with the State's regulatory scheme.

8

Michael, 2007 WL 2712964, at *1-3 (Nos. 10-11, 13, 19). In reviewing Michael's travel logbook, Officer Lucero noted that Michael had more "off duty" time, as well as more unusual series of travel routes than usually seen in other commercial trucking logbooks. Id. at *2 (Nos. 20-21). During a level-2 inspection of the trailer, Michael produced a bill of lading that was unusual in several respects, *e.g.,* it was handwritten and listed only three boxes of tools, leaving the majority of the refrigerated trailer empty. Id. at *3 (Nos. 26-29). In continuing with the safety inspection of the trailer, Michael was directed to unlock the trailer doors to allow the officer to compare the trailer's cargo with the bill of lading. Officer Lucero saw that most of the rear half of the trailer was empty. He further observed several features on the front wall of the trailer to lead him to believe there was a false wall at the trailer's front end. Id. at *4 (Nos. 32-39). Officer Lucero asked an MTD officer at the port of entry to inspect the trailer too, and Officer Destea agreed with Officer Lucero's assessment that there was a false wall. Id. (No. 40).

17. After hearing all of the evidence, the District Court found that Officer Lucero's observation of the features and measurements suggesting a false front wall in the trailer, combined with the irregularities in the logbook and bill of lading, the presence of an illegal radar detector in the tractor, the absence of a full load in the trailer, and the anomaly of carrying three crates identified as "tools" in a refrigerated trailer, gave the officers probable cause to seize the trailer and conduct a more thorough search of its contents for the presence of contraband. Id. at *5 (No. 47). The District Court Judge further noted that she did not consider or credit any testimony that one or more of the officers could smell the odor of marijuana during their initial inspection of the trailer. Thus, such testimony was not used in determining whether the officers had probable cause to prolong the seizure and conduct a more thorough search. Id. (No. 47 n.2).

9

18. The District Court Judge further concluded, after finding that a certified canine reliable alerted to the exterior of the trailer, that "[a]lthough the MTD officers already had probable cause to search Defendant's trailer . . . under the 'automobile exception' to the warrant requirement stated in the Fourth Amendment to the United States Constitution, Officer Lucero nevertheless delayed the search until a warrant could be obtained . . . ." Id. at 7 (Nos. 57, 63). After the dog alerted and Michael was advised of his *Miranda* rights, Officer Lucero wrote out an affidavit in support of the search warrant and eventually obtained the search warrant. Id. (Nos.65, 68). After opening up the boxes inside the trailer, the officers found what appeared to be marijuana. Id. (Nos. 70-72).

19. In reviewing the legal requirements to determine the existence of probable cause, the Court examined the totality of the circumstances. The trial court judge elected not to credit or consider the testimony that one or more of the officers could smell the odor of marijuana in the trailer during the initial safety inspection. Id. at 12. The Court concluded that: "regardless of the officers' ability to smell the odor of marijuana, they could still establish probable cause based on Officer Lucero's independent prior discovery of evidence concerning the false front wall during the initial inspection of the trailer's interior." Id. The Court further noted that in the situation faced by Officer Lucero, "[p]robable cause requires 'only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" Id. at 14 (internal citations omitted). Moreover, the Court stated:

> Given the reliability of the dog alert, the officers need not rely on their own sense of smell to establish probable cause. . . .[T]his claim [concerning destruction of most of the evidence] is of no consequence with respect to the search warrant, because there would still be enough information in Officer Lucero's affidavit to establish probable cause even if all references to an officer smelling the odor of marijuana insider the trailer were deleted from it.

10

Id. at 16.

20.     As a preliminary matter, the Court analyzes the merits of Petitioner's Fourth Amendment claims to determine the possible success of the ineffective assistance of trial counsel claims. Hyatt v. Rudek, 2012 WL 3292941, at *3 (W.D.Okla. July 5, 2012) (unpublished). Here, the District Court explicitly concluded that, under the circumstances of this case, ***even without consideration of testimony that an officer smelled the odor of marijuana,*** there was probable cause to issue the search warrant. Thus, Michael's Fourth Amendment claim as it relates to ineffective assistance of counsel has no merit. Counsel is not ineffective for failure to make an argument or objection when such argument or objection is without merit. *See* Sperry v. McKune, 445 F.3d 1268, 1275 (10th Cir.) (explaining that failure to raise a meritless claim is not ineffective assistance of counsel), *cert. denied*, 549 U.S. 1039 (2006); Cooks v. Ward, 165 F.3d 1283, 1296–97 (10th Cir. 1998) (counsel's failure to pursue nonmeritorious issues on appeal does not constitute ineffective assistance), *cert. denied*, 528 U.S. 834 (1999).

21.     Michael failed to show prejudice with respect to his attorney's lack of objection to the evidence used to support a finding of probable cause. Moreover, even if he had a "good" Fourth Amendment claim, he did not demonstrate the "gross incompetence" of his attorney. *See* Hyatt, 2012 WL 3292941, at *3 (internal citation omitted).

22.     The Court concludes that Michael showed neither error nor prejudice with respect to this ineffective of counsel claim. Thus, the Court recommends that it be denied.

> **2)     Failure to object to New Mexico Officers' "Illegal Search" of "Petitioner's Cargo when such searches are not authorized under New Mexico law"**

23.     Michael argues that a "Level II inspection," under NMSA 1978 § 65-5-1, "does not permit an inspector to open individual items on containers that make up the cargo." [Doc. 2, at 12.]

11

Thus, his attorney was allegedly ineffective by not objecting to an alleged Fourth Amendment violation involving the officer's search of the trailer's cargo.

24. Michael's argument makes little sense in light of Tenth Circuit legal authority. Indeed, he concedes that the Tenth Circuit Court of Appeals held in United States v. Mitchell, 518 F.3d 740, 752 (10th Cir. 2006), that "New Mexico's regulatory scheme clearly contemplates entrance into the trailer to inspect blocking and bracing, and also allows inspection of the contents of the vehicle." He further admits that the pertinent New Mexico statute provides that an inspector may "confirm the contents of the cargo." [Doc. 2, at 12.] Yet, Michael urges that the law does not contemplate "an inspector rip[ping] open individual containers and search[ing] the individual containers." [Id.] Michael appears to argue that Officer Lucero might have been allowed to look into the possible false wall in the trailer, but that he was not permitted to open the cargo.

25. In analyzing the pertinent New Mexico statute § 65-5-1, the Tenth Circuit instructed:

> The New Mexico statute authorizes inspectors to "inspect the vehicle ***and its contents*** to determine whether all laws and all rules and regulations of the departments of this state with respect to public safety, health, welfare and comfort have been fully complied with." N.M. Stat. Ann. § 65–5–1(F). In addition, the statute provides "[t]he person in charge of the port of entry may satisfy himself as to the contents of the cargo." Id. § 65–5–1(D). An inspector may also inspect the vehicle's contents to ensure all excise taxes on fuel, alcohol, or other property have been paid. Id. § 65–5–1(E). This court has held "New Mexico's regulatory scheme clearly contemplates entrance into the trailer to inspect blocking and bracing, and ***also allows inspection of the contents*** of the vehicle."

Mitchell, 518 F.3d at 752 (emphasis added). *See also* United States v. Gwathney, 465 F.3d 1133, 1138-40 (10th Cir. 2006) (holding that New Mexico's inspection system is constitutional under the regulatory search exception insofar as it allows an officer to enter a trailer to inspect its cargo).

26.     Moreover, in its detailed factual findings after the evidentiary hearing, the District Court reached the following conclusion based on an examination of the totality of the circumstances:

> The parameters of a Level 2 safety inspection correspond to the categories of information listed in the State's regulatory scheme and include both a review of paperwork (including the driver's license, medical card, logbook, vehicle registration, bill of lading, and permits) and an inspection of the vehicle itself (including the interior of the cab and sleeper compartment *as well as the interior of the trailer and its cargo).*

Michael, 2007 WL 2712964, at *3 (No. 25) (emphasis added). In denying Michael's second motion to suppress, the District Court also concluded that the officers did not exceed the lawful parameters of a Level 2 safety inspection during the initial search and seizure of Michael and his trailer, "and the officers used the information obtained within the lawful parameters of that safety inspection to develop probable cause for the additional search and seizure resulting in the discovery of the marijuana bundles . . . ." Id. at *16.

27.     Based on Tenth Circuit authority and consistent with the District Court's findings and holding, this Court concludes that the Officer was permitted to inspect the cargo of Michael's cargo and that there was no Fourth Amendment violation. Thus, as set forth above, counsel was not ineffective for raising an argument that had no merit. The Court recommends that this ineffective of assistance claim be denied.

### 3.     Other Alleged Errors by Counsel Concerning Belt Tapes

28.     Michael alleges that his trial attorney lied to him about having subpoenaed the State of New Mexico Department of Public Safety for Officer Lucero's audio recordings from his belt tapes. [Doc. 2, at 15.] Michael contends he later learned from appellate counsel that there was no subpoena for the belt tapes and that because trial counsel did not raise the issue on the record, it

could not be appealed. Michael summarily argues that the "audio recordings are significant, as the trial testimony of Officer Lucero was not indicative of actual events." [Doc. 2, at 16.] Michael asserts that the audio recordings, that "captured the actual voices and sounds" could have been used to impeach Officer Lucero. Thus, trial counsel allegedly was ineffective by lying to Michael about the subpoena and failure to procure the belt tape recordings.

29. As noted *supra*, the District Court held an evidentiary hearing and subsequently issued 47 factual findings with respect to the safety inspection at the port of entry and another 29 factual findings concerning the investigative detention, canine inspection, and the search warrant. Michael, 2007 WL 2712964, at *1-7 (Nos. 1-76). There is no dispute as to what occurred at the port of entry or the communications between officers and Michael. The only issue in dispute concerned whether evidence that an officer smelled the odor of marijuana in Michael's trailer would be excluded from trial due to destruction of the marijuana.

30. Michael provides no evidence as to what specific statements or evidence from belt tapes might have been used to impeach Officer Lucero. He fails to identify how Officer Lucero's testimony was untruthful or how the belt tapes might have demonstrated the officer's alleged untruthfulness. As such, Michael's assertions of how the belt tape recordings might have helped him at trial are speculative, conclusory, and unsupported. Such summary assertions fall far short of demonstrating that Attorney Blackburn's alleged error in failing to subpoena the belt tape recordings was so serious that counsel was not functioning as counsel for purposes of the Sixth Amendment, or that his attorney's failure to obtain the unspecified belt tape testimony was "completely unreasonable."

31. In addition, even if there was error by his attorney, Michael did not show any such error had "some conceivable effect on the outcome of the proceeding," let alone what he was

14

required to show, *i.e.,* that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Thus, Michael fails to demonstrate deficient performance by counsel or prejudice.

32.     The United States also points out that it is unclear if belt tape recordings ever existed in this case. The government was unable to confirm that the recordings existed. [Doc. 9, at 19.] Attorney Blackburn provided an affidavit, stating that he fully investigated this matter, including viewing and subpoenaing all evidence and that he pursued all legitimate avenues of defense that were available. [Doc. 9-1.] Attorney Blackburn further testified that he "never represented to Defendant that we would definitely procure such a belt recording," but that he did submit a discovery request that included a request for any and all tapes or belt tapes concerning the incident in question. No belt recordings were produced. [Doc. 9-1, ¶¶ 8, 9.] Attorney Blackburn stated that he did not believe then or now that Officer Lucero's belt recordings, if they existed, were relevant to or would have elicited impeachment material on any material and disputed issues.

33.     For all of the above-stated reasons, the Court concludes that Michael's ineffective assistance of counsel claim relating to belt tape recordings must fail and should be denied.

### 4.     **Cumulative Error by Counsel**

34.     Although it is not clear whether Michael intended to assert a claim of cumulative error by counsel, any such claim would be rejected. As noted above, trial counsel provided vigorous representation of Michael and was at least partially successful on a number of motions, in particular the motion to suppress evidence related to an officer smelling the odor of marijuana. Moreover, there can be no cumulative error of counsel when the Court already found and recommended that Michael failed to show evidence of any error by counsel. *See* <u>Montez v. Wyoming</u>, 431 F.App'x 750, 755 (10th Cir. July 27, 2011) (unpublished) (finding that because none of petitioner's individual

claims of ineffective assistance were successful, the alleged errors, taken together, cannot constitute cumulative error). Thus, the Court recommends that any claim of cumulative error by counsel be denied.

### **Recommended Disposition**

That Michael's claims of ineffective assistance of counsel and cumulative error by counsel be denied and that his § 2255 motion and this matter be dismissed, with prejudice; and

That under Rule 11 of the Rules Governing Section 2255 cases and 28 U.S.C. § 2253(c)(2), a certificate of appealability not issue because Michael failed to make a substantial showing that he has been denied a constitutional right.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge

3